Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50128 | **DATE** | 11/21/2011 |
| **CASE TITLE** | Midwest Flight Academy, Inc. vs. Thomas Cleveland | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, defendant's motion to dismiss is denied.

*[signature: Philip G. Reinhard]*

■ [ For further details see text below.]

Electronic Notices.

## STATEMENT - OPINION

Plaintiff, Midwest Flight Academy, Inc., brings this action, pursuant to 42 U.S.C. § 1983, against Thomas Cleveland, the airport manager for the City of DeKalb, Illinois ("City"), in his individual capacity. Plaintiff claims a denial of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution. Defendant moves to dismiss for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12 (b) (6).

The facts are taken from plaintiff's complaint. In 2009, plaintiff operated Specialized Service Operations ("SASO") at the DeKalb Taylor Municipal Airport consisting of a flight school and an aircraft rental business. To operate a flight school or an aircraft rental business at the airport, the operator is required to have an SASO contract with the City or a Fixed Base Operator ("FBO") contract with the City. Plaintiff had SASO contracts with the City for both its flight school and aircraft rental businesses.

Also, in 2009, DeKalb Aviation, LLC ("Aviation") was operating at the airport under an FBO contract with the City. When the City and Aviation entered their FBO contract, the member-managers of Aviation were M & E, LLC and KKM Aviation, LLC. On or about May 1, 2009, KKM Aviation, LLC withdrew as a member of Aviation and Fly America, Inc. ("Fly America") became a member-manager of Aviation. Fly America was owned in part by Jeffrey Kohlert, it's president. Kohlert and defendant are close friends who previously worked together at the DuPage Airport.

After becoming a member-manager of Aviation, Fly America , as a member-manager of Aviation, operated a flight school and aircraft rental business under the auspices of the FBO contract between Aviation and the City. The revenue from the flight school and aircraft rental business went to Fly America. Fly America was not approved as an operator of a flight school or aircraft rental business in its own capacity and the City and Fly America had not entered an SASO or FBO contract.

On or about December 16, 2009, an agreement was entered among Tom Stellman (the then owner of plaintiff's stock), plaintiff, and Christopher Riggsby, to sell all of the outstanding stock of plaintiff to Riggsby. Plaintiff's SASO contracts with the City required the written consent of the City to any transfer of

the voting stock of plaintiff.

In January 2010, defendant agreed with Kohlert that defendant would stall the City's approval of the transfer of plaintiff's stock to Riggsby for about three months in order to cause plaintiff's students to move from plaintiff's flight school to the flight school being operated by Fly America, in its capacity as member-manager of Aviation. In order to delay the City's approval of plaintiff's stock transfer, defendant required plaintiff to obtain a recommendation for the approval of the transfer from the DeKalb Airport Advisory Board ("Board") before the matter would be presented to the city council of the City. Defendant told plaintiff that in order to obtain City approval, it would first have to submit a business plan to the Board and appear before the Board which would conduct a hearing and make a recommendation to the City.

Plaintiff promptly prepared and submitted the business plan. The Board's December 2009 and January 2010 meetings were cancelled. The Board met in February 2010 but defendant chose not to present the matter of plaintiff's stock transfer at that meeting. The matter was ultimately presented at the Board's March 16, 2010 meeting and the Board unanimously recommended approval of the transfer. The City, at its city council meeting on or about April 12, 2010, approved the transfer. It took four months for plaintiff to obtain the necessary approval from the City to resume its flight school and aircraft rental operation under the existing SASO contracts.

Eight months later, in December 2010, the City advised Aviation it was in breach of its FBO contract. Defendant locked Aviation out of the building it was leasing at the airport and the City took the position that Aviation's FBO contract was terminated and, therefore, that Fly America could no longer continue to operate a flight school and aircraft rental business as a member-manager of Aviation. Defendant and Kohlert discussed how Fly America could operate a flight school and aircraft rental business in its own capacity, apart from Aviation, and how Fly America could expedite a request for City approval of an SASO contract with Fly America to do so.

Defendant agreed with Kohlert not to require Fly America to submit a business plan or to appear before the Board to obtain a recommendation for approval of the proposed SASO contract. Instead, defendant wrote a memo to the mayor and city council proposing a city council resolution authorizing the mayor on behalf of the city to enter into SASO contracts with Fly America for a flight school and aircraft rental business. The memo and two newly drafted SASO contracts signed by Kohlert were presented to the city council on or about January 10, 2011 and the council authorized the mayor to enter these contracts on behalf of the City. It took Fly America only three weeks to obtain the necessary approval to begin operations under newly prepared SASO contracts while it had taken four months for plaintiff to obtain approval to resume operations under its existing SASO contracts.

Plaintiff alleges defendant intentionally treated Fly America more favorably than plaintiff, that they were similarly situated and that the difference in treatment was not rationally related to any governmental objective. Plaintiff claims this difference in treatment caused it substantial loss of profits, loss of its client base, and made it unable to pay its rent at the airport forcing it to relocate to another airport thereby incurring moving expenses. Plaintiff contends these actions, taken by defendant under color of law, denied it equal protection.

Defendant moves to dismiss asserting plaintiff fails to state a claim because it does not adequately plead a "class of one" equal protection claim. To survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S.Ct. 1937, 1949 (2009). To state a "class of one" equal protection claim, plaintiff must allege it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. LaBella Winnetka, Inc. v. Village of Winnetka, 628 F.3d 937, 942 (7th Cir. 2010). "No rational basis" in a "class of one" equal protection claim certainly includes the situation where "the defendant deliberately sought to deprive [the plaintiff] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position."

Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000); see also, McDonald v. Village of Winnetka, 371 F.3d 992, 1001 (7th Cir. 2004).

Plaintiff's allegations are sufficient to satisfy the second of the two requirements. Plaintiff alleges defendant intentionally acted to delay, for about three months, the approval of the City to the stock transfer to Riggsby in order to keep plaintiff from operating its business during that time so that plaintiff's students would be induced to move to the flight school operated by Fly America, a company owned by defendant's friend, Kohlert. Plaintiff alleges defendant manipulated the approval process to produce delay by requiring the presentation of a business plan to the Board, requiring a Board hearing and recommendation to the City on the approval issue and choosing not to bring the approval issue before the Board at its first available meeting so as to delay the City's approval and keep plaintiff from operating its business during the pre-approval period all for the benefit of Kohlert's business.

The question then is whether the complaint adequately alleges plaintiff was treated differently than others similarly situated. Plaintiff alleges only one comparator-- Fly America. There is no question plaintiff has alleged it was treated differently than Fly America. Plaintiff was required to prepare a business plan, submit it to the Board for a recommendation of approval of the stock sale, wait for the Board to act on its request, and then wait for the city council to act on the Board's recommendation to give its approval. Fly America was not required to submit anything to the Board, or have the Board make a recommendation on its proposed SASO contracts with the City. Fly America bypassed the Board completely, submitted proposed contracts directly to the City, and had them approved by the city council. Fly America had a much smoother and quicker approval process than plaintiff based on the different and less onerous requirements defendant imposed on it as compared to plaintiff. The treatment was clearly different and less favorable to plaintiff.

But, were plaintiff and Fly America similarly situated? To be "similarly situated," plaintiff and its comparator "must be identical or directly comparable in all material respects." LaBella Winnetka, Inc., 628 F.3d at 942. Defendant argues they were not similarly situated because plaintiff was operating under SASO contracts and that those contracts required City approval for a change in voting stock ownership in order for plaintiff, with its new owner, to resume its operations. The complaint does not allege that Riggsby, the new owner, had ever had any prior dealings with the City or the airport or that Riggsby had ever previously operated a flight school or aircraft business.

In contrast, defendant argues, Fly America was not undergoing any ownership or management change. Fly America had been operating a flight school and aircraft rental business at the airport, as a member-manager of Aviation. Fly America was simply looking to continue the business it had already been conducting at the airport, only with direct SASO contracts with the City rather than as a member-manager of Aviation. Additionally, defendant contends the time lapse, almost one year, between the time plaintiff was seeking City approval and the time Fly America proposed its contracts with the City makes them not similarly situated.

Despite these differences, the court finds plaintiff has alleged it was similarly situated to Fly America for purposes of withstanding this motion to dismiss. Both plaintiff and Fly America, by virtue of its role as member-manager of Aviation, had been operating flight schools and aircraft rental businesses at the airport. Both had situations arise that required them to obtain City approval– either to resume operations with a new owner of a party to a contract in the case of plaintiff or to resume operations under a new contract with an owner of a prior contract party in the case of Fly America– to resume operating their respective flight schools and aircraft rental businesses. While not identical, these situations, as alleged, are directly comparable in all material respects, id., in that City approval had to be sought and obtained. As alleged, defendant intentionally made plaintiff's approval process more onerous and delayed, to plaintiff's detriment, than he made Fly America's approval process.

For the foregoing reasons, defendant's motion to dismiss is denied.